UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEJENAY BECKWITH and BEVERLY FLORES on their Own Behalf and Others Similarly Situated, | § § § § | |
| | § | |
| *Plaintiffs,* | § § | |
| | § | Civil Action No. 4:17-cv-02859 |
| v. | § § | |
| CITY OF HOUSTON, TEXAS, et al., | § § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS', CITY OF HOUSTON, PETER STOUT, ANNISE PARKER, LEE P. BROWN, CLARENCE BRADFORD, CHARLES MCCLELLAND and SAM NUCHIA, MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b) or in the alternative MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R. CIV. P. 56**

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT .................................................................... 1

NATURE OF PROCEEDING AND PROCEDURAL HISTORY ................................. 1

    I.   ISSUES TO BE RULED UPON BY THE COURT ................................. 2

    II.  STANDARDS FOR DISMISSAL AND SUMMARY JUDGMENT .................... 3

         A.  Motion to Dismiss pursuant to 12(b)(6) ................................. 3

         B.  Motion to Dismiss pursuant to 12(b)(1) ................................. 4

         C.  This Court May Convert a 12(b) Motion to Dismiss to a Summary Judgment Motion ... 4

ARGUMENT ....................................................................................... 5

    III. Plaintiffs' claims are barred by the Statute of Limitations ................ 5

         A.  Beckwith's claims are barred by the statute of limitations .................... 7

         B.  Flores' claims are also time barred ................................... 8

         C.  Plaintiffs' Statute of Limitations Should Not Be Tolled .................... 9

    IV. All of Plaintiffs fail to state claims for which relief may be granted ........ 11

         A.  Plaintiffs' due process claims fail as a matter of law ........................ 12

         B.  Plaintiffs' allegations in their *Second Amended Complaint* do not establish an equal protection claim .................................................................. 13

         C.  Plaintiffs consented to the collection of the SAKS and therefore have failed to plead a . Fourth Amendment violation ................................................ 14

         D.  Plaintiffs' Fifth Amendment claims must be dismissed .................... 15

         E.  The Plaintiffs Fail to State A Claim for their §§ 1985 and 1986 Allegations ............ 16

    V.  The individual defendants are entitled to qualified immunity .................. 18

         A.  Qualified Immunity Standard ........................................... 19

         B.  Plaintiffs have not alleged facts that establish that any of the individual defendants violated a constitutional right ................................................. 19

             1.  Plaintiffs have not alleged any facts that would establish that any Houston Mayor and/or Dr. Stout were policymakers for the Houston Police Department ............ 21

             2.  Plaintiffs have not alleged any facts that would establish that any of the individual defendants adopted and implemented unconstitutional policies that casually result in the constitutional injury ............................................... 21

3.  Plaintiffs' failure to train and supervise claims fail to allege facts which would entitle them to relief ............................................................................................................. 22

C.  The constitutional rights Plaintiffs complain of were not clearly established at the time23

VI. Plaintiffs' state law negligence claims should be dismissed ........................................................ 23

A.  Legal Standard for governmental immunity under the Texas Tort Claims Act .............. 24

B.  Plaintiffs have not stated a cause of action under the TTCA because they have not alleged facts that, even if true, would result in a waiver of immunity ............................................ 25

1.  Plaintiffs have not alleged facts supporting a claim for an injury caused by a condition or use of tangible personal property .............................................................................. 26

a.  Non-use of property cannot support a claim under the TTCA ........................... 26

b.  Misuse of information cannot support a TTCA claim ............................................ 28

c.  Failure to train and supervise .................................................................................... 29

d.  The TTCA does not waive immunity for a claim arising from the failure to provide or the method of providing police or fire protection ........................................... 29

e.  Plaintiffs have not stated a claim under the TTCA because the conduct alleged is the same as that underlying their 1983 claims ......................................................... 30

C.  To the extent Plaintiffs seek to recover damages from any of the individual defendants under the TTCA, those claims must be dismissed under section 101.106 of the Act .... 30

D.  Plaintiffs' state law claims are time barred and should be dismissed ................................ 32

**CONCLUSION** ............................................................................................................................. 32

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton,* 483 U.S. 635 (1987)..................................................................23

*Anderson v. Liberty Lobby,* 477 U.S. 242 (1986) ...............................................................5

*Arabian Shield Dev. Co. v. Hunt,* 808 S.W.2d 577 (Tex.App.—Dallas 1991, writ denied) ...............10

*Ashcroft v. al-Kidd,* 563 U.S. 731 (2011)...............................................................19, 23

*Ashcroft v. Iqbal,* 556 U.S. 662 S.Ct. 1937 (2009) .............................................................3

*Baker v. Puntal,* 75 F.3d 190 (5th Cir. 1996)....................................................................3

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 S.Ct. 1955 L.Ed.2d 929 (2007) ..................................3

*Bell v. Showa Denko K.K.,* 899 S.W.2d 749 (Tex.App.—Amarillo 1995, writ denied) .....................10

*Beltran v. City of El Paso,* 367 F.3d 299 (5th Cir. 2004)......................................................13

*Bombadier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348 (5th Cir. 2003)......4

*Britt v. Jackson Cnty., Miss.,* No. 1:11–CV–00074–HSO–JMR, 2012 WL 2460534, at *8 (S.D.Miss. June 27, 2012) ..............................................................................17

*Burge v. Parish of St. Tammany,* 187 F.3d 452 (5th Cir. 1999) .............................................5

*Burrell v. Newsome,* 883 F.2d 416 (5th Cir. 1989) ..............................................................9

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .....................................................................5

*Cherry v. Texas Dept. of Criminal Justice,* 978 S.W.2d 240 (1998) .........................................28

*City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988) .............................................................21

*City of Tyler v. Likes,* 962 S.W.2d 489 (Tex. 1997).............................................................24

*City of Watauga v. Gordon,* 434 S.W.3d 586 (Tex. 2014) ...............................................25, 30

*Copeland v. Wasserstein,* 278 F.3d 472 (5th Cir. 2002) ......................................................4

*Dallas County Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339 (Tex. 1998) .........27, 28

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189 (1989) ....................12, 13, 22

*Evans v. City of Houston,* 246 F.3d 344 (5th Cir. 2001) ........................................................5

*Gartrell v. Gaylor,* 981 F.2d 254 (5th Cir. 1993) .................................................................5

*Gates v. Texas Dep't of Prot. and Reg. Servs.,* 537 F.3d 404 (5th Cir. 2008)............................20

*Gomez v. Whitney,* 757 F.2d 1005 (9th Cir. 1985) .............................................................12

*Goodman v. Harris Cnty.,* 571 F.3d 388 (5th Cir. 2009) .....................................................20

*Hamilton v. Chaffin,* 506 F.2d 904 (5th Cir.1975)..............................................................17

*Harrison v. United States,* 708 F.2d 1023 (5th Cir. 1983) .....................................................6

*Hintz v. Lally,* 305 S.W.3d 761 (Tex. App.—Houston [14[th] Dist.] 2010, no pet.)........................31

*Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.,* 143 F.3d 1006 (5th Cir. 1998) ......4

*Isquith v. Middle S. Utils., Inc.,* 847 F.2d 186 n. 3 (5th Cir.1988)........................................4, 5

*Kassen v. Hatley,* 887 S.W.2d 4 (Tex. 1994)......................................................................28

*Kerlin v. Sauceda,* 263 S.W.3d 920 (Tex. 2008) .................................................................11

*Kerrville v. Clark,* 923 S.W.2d 582 (Tex. 1996) .................................................................27

*King-White v. Humble Indep. Sch. Dist.,* 803 F3d 754 (2015) ...............................................8

*Kitty Hawk Aircargo, Inc. v. Chao,* 418 F.3d 453 (5th Cir. 2005).............................................6

*Lavellee v. Listi,* 611 F.2d 1129 (5th Cir.1980) ....................................................................5

*Leatherman v. Tarrant Cnty Narc. Intellig. & Coord'n Unit,* 507 U.S. 163 (1993) ......................3

*Lockett v. New Orleans City,* 607 F.3d 992 (5th Cir. 2010) ..................................................17

*Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015 (5th Cir. 1996)......................................4, 6

*Malley v. Briggs,* 475 U.S. 335 (1986)..............................................................................19

*Marceaux. V. Lafayette City—Parish Consol. Gov't,* 921 F. Supp.2d 605 (W.D. La. 2013)...............17

*Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653 (Tex. 2008)...........................24, 31

*Moore v. Donald*, 30 F.3d 616 (5th Cir. 1994) ............................................................................ 5

*Moreno v. Sterling Drug, Inc*, 787 S.W.2d 348 (Tex. 1990) ...................................................... 10

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137 (5th Cir. 2007) ...................... 3

*Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392 (Tex. App.—Dallas 1998, no pet.) .................. 25, 29

*Orsatti v. New Jersey State Police*, 71 F.3d 480 (3rd Cir. 1995) .............................................. 12

*Owens v. Okure*, 488 U.S. 235 (1989). *Id.* at 243 ........................................................................ 9

*Pearson v. Callahan*, 555 U.S. 223 (2009) .............................................................................. 19

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) ............................................ 5, 6, 23

*Porter v. Epps,* 659 F.3d 440 (5th Cir. 2011) ............................................................................ 20

*Prager v. LaFaver*, 180 F.3d 1185 (10th Cir.1999) .................................................................... 4

*R2 Investments LDC v. Phillips*, 401 F.3d 638 (5th Cir. 2005) .................................................... 4

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ............................................................ 4

*Raney v. Young*, 2005 WL 1249265 (S.D. Texas) ....................................................................... 4

*Ray Ferguson Interests, Inc. v. Harris Cty. Sports and Conv. Corp.*, 169 S.W.3d 18 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ................................................................................ 24

*Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006) ........................................ 24

*Redden v. Denton Cty.*, 335 S.W.3d 743 (Tex. App.—Fort Worth 2011, no pet.) ....................... 28

*Rhyne v. Henderson Cnty.*, 973 F.2d 386 (5th Cir. 1992) .......................................................... 20

*Rismed Oncology Systems, Inc. v. Baron*, 638 Fed. Appx, 800 (11th Cir. 2015) ........................ 33

*Rogge v. City of Richmond*, 506 S.W.3d 570 (Tex. App.—Houston [1st Dist.] 2016 (reh'g overruled 2017).......... 27

*Rolen v. City of Brownfield, Tex.*, 182 Fed.Appx. 362 (5th Cir. 2006) ...................................... 23

*Rollerson v. Gonzalez* 2007 WL 1729643, at *4 ....................................................................... 17

*Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012) ............................................................ 24

*S.V. v. R. V*, 933 S.W.2d 1 (Tex. 1996) ...................................................................................... 8

*Sampson v. Univ. of Texas at Austin*, 500 S.W.3d 380 (Tex. 2016) .............................. 25, 26, 27

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................................................ 19

*Schneckloth v. Bustamante*, 412 U.S. 218 (1973) ..................................................................... 15

*Shipp v. McMahon*, 234 F.3d 907 (5th Cir. 2000) ...................................................................... 13

*Shultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) ........................................................................... 3

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) ..................... 4

*Spotts v. United States*, 613 F.3d 215 (5th Cir. 2011) .................................................................. 6

*Stanley v. Foster*, 464 F.3d 565 (5th Cir. 2006) .......................................................................... 9

*State v. Terrell*, 588 S.W.2d 784 (Tex. 1979) ..................................................................... 25, 29

*Tahoe-Sierra Pres. Council, Inc. v. Taho Reg'l Planning Agency,* 535 U.S. 302 (2002) .............. 16

*Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583 (Tex. 2001) ................................... 24, 27

*Texas A&M Univ. v. Bishop*, 156 S.W.3d 580 (Tex. 2005) ........................................................ 29

*Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575 (Tex. 2001) ........................... 25, 28, 29, 30

*Thompson v. Johnson*, 348 Fed. Appx. 919 (5th Cir. 2009) ....................................................... 19

*Timberlake v. A.H. Robins Company, Inc.*, 727 F.2d 1363 (5th Cir. 1984) ............................... 10

*Timmons v. University Med. Ctr.*, 331 S.W.3d 840 (Tex. App.—Amarillo 2011, no pet.)............ 7, 32

*Tolan v. Cotton*, 134 S.Ct. 1861 (2014) ............................................................................... 5, 19

*Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005) ........................................................... 12

*United States v. Jacobsen*, 466 U.S. 109 (1984) ...................................................................... 14

*United States v. Richard*, 994 F.2d 244 (5th Cir. 1993) ............................................................ 14

*Univ. of Tex. Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ......... 29

*Univ. of Tex. Med. Branch v. Thompson*, 2006 WL 1675401, *3-4 (Tex. App.—Houston [14th Dist.] June 20, 2006, no pet.) ................................................................................................. 27

*University of Tex. Health Science Center at Houston v. Rios*, --- S.W.3d ---, 2017 WL 6396028, at * (Tex. 2017) 24, 32

*University of Texas M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876 (Tex. App.—Houston [14th Dist.] 2010, no pet.) .......................................................................................................................... 29

*University of Texas Med. Branch at Galveston v. York*, 871 S.W.2d 175 (Tex. 1994) .................................. 28

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ................................................ 13

*Washington v. Davis*, 426 U.S. 229 (1976) .................................................................................................. 13

*Wedgewood L.P. I v. Twp. Of Liberty*, 610 F.3d 340 (6th Cir. 2009) ............................................................ 12

*Willis v. Maverick*, 760 S.W.2d 642 (Tex. 1988) ...................................................................................... 8, 10

*Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401 (5th Cir. 2007) ............................................................ 19

STATUTES

42 U.S.C. § 1985(1) ...................................................................................................... 16
42 U.S.C. § 1985(2) ................................................................................................ 16, 17
42 U.S.C. § 1985(3) ...................................................................................................... 17
42 U.S.C. §§ 1985 and 1986 ........................................................................................... 3
5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
§ 1366 (1969) .............................................................................................................. 4
Federal Rules of Civil Procedure 12(b) ..................................................................... 1, 4
Federal Rules of Civil Procedure 12(b)(1) ........................................................... passim
Federal Rules of Civil Procedure 12(b)(6) ........................................................... passim
Federal Rules of Civil Procedure 56 .......................................................................... 1, 5
Federal Rules of Civil Procedure 56 12(d) ..................................................................... 5
Federal Rules of Civil Procedure 8 ............................................................................. 11
Federal Rules of Evidence 201 ....................................................................................... 6
Houston City Charter, Article IX, § 11 .................................................................... 7, 32
Houston, Tex. Code of Ordinances, ch. 34, art. II, §§ 34-22 and 23 (1968) ............... 21
Section 1983 ......................................................................................................... passim
Section 1985 ........................................................................................................... 16, 17
Section 1986 ........................................................................................................... 16, 17
TEX. CIV. PRAC. & REM. CODE § 101.021 (West 2011) ............................................... 25
TEX. CIV. PRAC. & REM. CODE § 101.021(2) ............................................................... 26
TEX. CIV. PRAC. & REM. CODE § 101.055(3) .......................................................... 25, 29
TEX. CIV. PRAC. & REM. CODE § 101.057 (West 2011) ........................................... 25, 30
TEX. CIV. PRAC. & REM. CODE § 101.101 ................................................................ 7, 32
TEX. CIV. PRAC. & REM. CODE § 101.106 (a), (b), (e), and (f) ...................... 30, 31, 32
TEX. CIV. PRAC. & REM. CODE § 101.106 (e) .............................................................. 31
TEX. CIV. PRAC. & REM. CODE § 16.003 (West 2002 and Supp. 2012) ..................... 7, 32
TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.022 (West 2011) ............................... 26
TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 1986) ............................. 5, 9
TEX. CIV. PRAC. & REM. CODE § 101.106 ...................................................... 24, 30, 31
Texas Tort Claims Act .......................................................................................... passim

TO THE HONORABLE JUDGE VANESSA D. GILMORE:

Defendants, CITY OF HOUSTON, PETER STOUT, CEO of Houston Forensic Science Center, former Houston Mayors, ANNISE PARKER, former Houston Police Chiefs CLARENCE BRADFORD, SAM NUCHIA, CHARLES MCCLELLAND, and LEE P. BROWN, both as a former mayor and former Houston Police Chief, file this Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, or in the alternative Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56, and in support thereof state as follows:

## SUMMARY OF ARGUMENT

Plaintiffs' cause of action should be dismissed as it was filed outside of the applicable statute of limitations for both the federal and state claims listed in the complaint. Moreover, Plaintiffs fail to allege facts that would support a cause of action for any of the alleged infringements of their constitutional rights or for any of their state law claims. Finally, the individual defendants in this case are each entitled to qualified immunity for the acts complained of by Plaintiffs, and any state law claims against them must be dismissed pursuant to the Texas Tort Claims Act.

## NATURE OF PROCEEDING AND PROCEDURAL HISTORY

This case is a putative class action based on Plaintiffs' complaints that the City of Houston and individual policy makers failed to test Sexual Assault Kits (SAKS) following their sexual assaults. The claims are brought by two named individuals, DeJenay Beckwith and Beverly Flores.

Plaintiff Beckwith filed her *Original Complaint* on September 24, 2017. Plaintiff's deadline to serve all Defendants was December 26, 2017. Plaintiff filed her *First Amended Complaint* on December 20, 2017, adding an additional plaintiff, Beverly Flores. When they filed their First Amended Complaint, Plaintiffs had made no request for issuance of summons nor had they made any attempts to serve the Defendants by the December 26, 2017 deadline.

1

Plaintiffs filed their *Unopposed Motion for Extension of Time to Serve Complaint* on December 25, 2017. The Court granted their motion and allowed Plaintiffs until January 26, 2018, to perfect service. Plaintiffs requested issuance of summons for all Defendants on January 2, 2018. On January 26, 2018, Plaintiffs filed their second *Unopposed Motion for Extension of Time to Serve Defendants*. As of the date of this filing, all Defendants, except former Houston Mayors Bill White and Bob Lanier (deceased) and former Houston Police Chiefs, Harold Hurtt and Elizabeth Watson, have been served.

On February 14, 2018, Defendants filed their Motion to Dismiss this action. (Dkt. 17). On March 7, 2018, Plaintiffs filed their Second Amended Complaint. (Dkt. 27). Then on March 15, Plaintiffs filed their Motion for Leave to File Excessive Pages, which included, as an exhibit, a response to Defendant's Motion to Dismiss. (Dkts. 31, 31-1)

## I.    ISSUES TO BE RULED UPON BY THE COURT

1.    **Are Plaintiffs' claims barred by the applicable two-year statute of limitations?**

2.    **Have the Plaintiffs stated a claim under the Due Process Clause, where Plaintiffs voluntarily submitted specimens and the Due Process Clause does not provide a guarantee as to the minimum levels of safety and security the state must provide?**

3.    **Have the Plaintiffs stated a claim under Equal Protection Clause, where Plaintiffs have not identified any policy or fact showing that the City of Houston intended to discriminate?**

4.    **Have the Plaintiffs stated a claim under the Fourth Amendment, where Plaintiffs consented to the collection of specimens for sexual assault kits?**

5.    **Have the Plaintiffs stated a claim under the Fifth Amendment, where the collection of SAKs kits is not a "taking", and the City was required under Texas law to retain SAKS kits?**

6.      Have the Plaintiffs stated a claim under 42 U.S.C. §§ 1985 and 1986, where their allegations of conspiracy are barred by law because the co-conspirators were all employees of the City of Houston?

7.      Are the individual Defendants entitled to qualified immunity?

8.      Are all Defendants entitled to immunity from Plaintiff's state law negligence claims?

9.      Are all the individual Defendants entitled to dismissal of the state law claims against them pursuant to the election of remedies provisions of the Texas Tort Claims Act?

## II.      Standards for Dismissal and Summary Judgment

### A.      Motion to Dismiss pursuant to 12(b)(6)

A motion to dismiss a Section 1983 claim under Rule 12(b)(6) is proper when the plaintiff's well pleaded facts are accepted as true, yet are insufficient to state a claim entitling the plaintiff to relief. *Leatherman v. Tarrant Cnty Narc. Intellig. & Coord'n Unit*, 507 U.S. 163, 164 (1993). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, plaintiff must "'raise a right to relief above the speculative level.'" *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). As the Fifth Circuit explained in *Shultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995), a plaintiff must support his claim with "'sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.'" *Baker v. Puntal*, 75 F.3d 190, 197 (5th Cir. 1996) (quoting *Shultea*, 47 F.3d at 1434).

A complaint that "offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court should not "strain to find inferences favorable to the plaintiffs" or "accept 'conclusory allegations, unwarranted deductions, or

legal conclusions.'"  *R2 Investments LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  A Court of Appeals examines a district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim applying a *de novo* standard of review.  *See Copeland v. Wasserstein,* 278 F.3d 472, 477 (5th Cir. 2002); *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996).

### B.      Motion to Dismiss pursuant to 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss an action for lack of subject matter jurisdiction.  FED. R. CIV. PRO. 12(b)(1).  The Court must dismiss a cause of action for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case."  *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).  The burden of establishing subject matter jurisdiction is on the party seeking to invoke it.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  In deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts.  *Id.*  The granting of a motion to dismiss under Rule 12(b)(1) for lack of standing is reviewed *de novo.*  *Raney v. Young,* 2005 WL 1249265 (S.D. Texas), at *2 (citing *Bombadier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 351 (5th Cir. 2003)).

### C.      This Court May Convert a 12(b) Motion to Dismiss to a Summary Judgment Motion

Rule 12(b) grants courts discretion to convert a motion to dismiss to a motion for summary judgment, if the court accepts and considers materials extraneous to the pleadings. *See Prager v. LaFaver,* 180 F.3d 1185, 1188–89 (10th Cir.1999); *Isquith v. Middle S. Utils., Inc.,* 847 F.2d 186, 193 n. 3 (5th Cir.1988) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (1969)). A court exercises this discretion by determining

whether the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate disposing of the action. *Isquith,* 847 F.2d at 193 n. 3. If the court decides to consider such extraneous material, then the Rule 12(b)(6) motion is converted to a motion for summary judgment under Rule 56. FED. R. CIV. P. 12(d).The moving party is entitled to summary judgment if the pleadings, discovery, disclosure materials, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); FED.R.CIV.P. 56(c). Facts are considered material if they might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247-248 (1986). When considering evidence, all reasonable inferences are to be resolved in favor of the non-moving party. *Tolan v. Cotton,* 134 S.Ct. 1861, 1863 (2014); *Anderson v. Liberty Lobby,* 477 U.S. 242, 247-248 (1986); *Evans v. City of Houston,* 246 F.3d 344, 348 (5th Cir. 2001). A summary judgment is reviewed *de novo.* *Burge v. Parish of St. Tammany,* 187 F.3d 452, 464 (5th Cir. 1999).

## ARGUMENT

### III.    Plaintiffs' claims are barred by the Statute of Limitations

There is no federal statute of limitations for § 1983 claims, therefore, district courts use the forum state's personal injury limitations period. Texas' general personal injury limitations period is **two years**. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986). *Moore v. Donald*, 30 F.3d 616, 620 (5th Cir. 1994). Although the Texas limitations period applies, federal law governs when a § 1983 claim accrues, and "[u]nder federal law, a cause of action accrues when *the plaintiff knows or has reason to know* of the injury which is the basis of the action." *Gartrell v. Gaylor,* 981 F.2d 254, 257 (5th Cir. 1993) (emphasis added). "The statute of limitations ... begins to run when the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury. . .'" *Id.* (quoting *Lavellee v. Listi,* 611 F.2d 1129, 1131 (5th Cir.1980)). See also *Piotrowski v. City of Houston,* 237 F.3d 567, 576 (5th Cir. 2001) (recognizing that a two-year statute of limitations applies to §1983 action in Texas).

"[A] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Spotts v. United States*, 613 F.3d 215, 238 (5th Cir. 2011) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 1995)). "'[A]wareness [of the existence of the injury and causation] ... does *not* mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 576). Thus, for awareness of causation, a plaintiff "must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection ... or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury." *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

Throughout the 2000's there was national news of backlogs of testing of SAK's kits throughout the United States.  On February 13, 2013, the Mayor's office published a press release detailing the backlog in testing sexual assault kits at the Houston Police Department and the steps that the City was taking to clear up the backlog.  (Exhibit A).[1]  Finally, in 2013, the City announced that nearly ten thousand test kits had been sent for testing to clear up the backlog.  This was public information that was available to both of the named plaintiffs as well as all of the members of the class.  Based on the 2013 press release, the class knew, or should have known, that backlogs existed, which is the cause of the harm claimed by Plaintiffs.  As a result, they had until 2015 to file a cause of

---

[1] This press release is available online at http://www.houstontx.gov/mayor/press/20130213/html. The City requests that the Court take judicial notice under Fed. R. Evid. 201 of the filings from the Harris County District Clerk's website relating to the felony criminal proceedings against Plaintiff.  Rule 201 states as follows:  "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. . . The court must take judicial notice if a party requests it and the court is supplied with the necessary information."  The Fifth Circuit has held that judicial notice under Rule 201 is appropriate for information posted on a government website.  *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).  Furthermore, in deciding a motion to dismiss, the court may consider matters of which they may take judicial notice.  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-1018 (5th Cir. 1996).

action against the City for a failure to test their SAKS kits.  However, Plaintiffs did not file this action until 2017 which is two years past their statute of limitations.

Moreover, the test kits that were backlogged were finally all tested in 2014[2]. (Exhibit B) The results of those tests led to the prosecution of the sexual assault cases against the two individuals who raped the named plaintiffs in this case.  Those results were available to the plaintiffs in 2014, had they exercised due diligence to gain this information from HPD.  The City asks that this court take judicial notice of the publicly available information regarding HPD's backlog of test kits and dismiss this action as it was not brought within the applicable statute of limitations period.

Similarly, Plaintiffs' state law claims are time barred under the two-year statute of limitations for the same reasons discussed above relating to their federal Section 1983 claims.  *See* TEX. CIV. PRAC. & REM. CODE § 16.003 (West 2002 and Supp. 2012).  In addition, the discovery rule does not toll the notice provisions of the Texas Tort Claims Act, which require plaintiffs to provide notice to Houston of any claim within ninety days of the injury.  *See Timmons v. University Med. Ctr.,* 331 S.W.3d 840, 848 (Tex. App.—Amarillo 2011, no pet.); TEX. CIV. PRAC. & REM. CODE § 101.101, as modified by Article IX, § 11 of the Houston City Charter.  Thus, Plaintiffs' negligence claims are time barred and should be dismissed under Rule 12(b)(6) for failure to state a claim, and under Rule 12(b)(1) for failure to give timely notice.

### A.      Beckwith's claims are barred by the statute of limitations

In this case, Beckwith's assault occurred in 2011.  Her rape kit was tested in 2013.  In 2014, her assailant, David Lee Cooper was confirmed as the perpetrator in her assault, and he was charged with the offense on September 2, 2014.  (Exhibit C)[1] The documents in this case were publicly available to Beckwith.

---

[2] This information was made public through numerous media outlets including the Texas Observer in an article dated October 8, 2014 available at:   https://www.texasobserver.org/hpd-leads-the-way-in-testing-backlogged-rape-kits-but-texas-has-a-long-way-to-go/.

The question is not when Plaintiff knew that she had a legal cause of action.  *King-White v. Humble Indep. Sch. Dist.,* 803 F3d 754, 759-61 (2015).  Instead the question is when she knew of "the facts that would ultimately support a claim." *Id.*  Most of the facts, including the delay in finding their assailants due to lack of testing, was all available to Beckwith more than two years before she filed this action.

By September 2014, Beckwith's assailant was arrested.  However, Beckwith did not file her original complaint until September 24, 2017, more over two years since her assailant was arrested.  Beckwith's claims are outside of the statute of limitations on this case and her claims must be dismissed, with prejudice.

## B.      Flores' claims are also time barred.

Like Beckwith, Flores too has a statute of limitations bar that she cannot overcome.  Flores' test kit results were returned to HPD in 2014.  (Exhibit D).  As with Beckwith, Flores should have known by 2013 that there was no testing of her test kit based on the City's press release, but she did not file her case within the time frame.  Flores failed to the exercise a degree of reasonable care and diligence to ascertain the information that her kit wasn't tested until 2014.  *S.V. v. R. V*, 933 S.W.2d 1, 4 (Tex. 1996).  Furthermore, Flores' rape occurred in 2011, however, she waited years to follow up on her case and didn't file suit against the city until 2017, a delay of six years.  Surely, she knew that there was no arrest in her case for each of those six years, yet she failed to do anything to diligently pursue her claim.  Therefore, she cannot now benefit from the discovery rule.  Furthermore, as Flores has shown no facts that the City or HPD fraudulently concealed information related to the lack of testing of backlogged kits, she cannot overcome her statute of limitations on that theory.  See *Willis v. Maverick*, 760 S.W.2d 642, 647 (Tex. 1988).

## C.      Plaintiffs' Statute of Limitations Should Not Be Tolled

Plaintiffs' Second Amended Complaint does nothing to change the fact that Plaintiffs' claims in this case are barred by the statute of limitations.  Plaintiffs' argument regarding the five-year statute of limitations for this case because it involves a sexual assault flies in the face of the case law of this circuit and Supreme Court jurisprudence.  In 1989, the Supreme Court, again, stepped in to "provide courts with a rule for determining the appropriate ... limitations statute that can be applied [to all § 1983 claims] with ease and predictability in all 50 States" with its decision in *Owens v. Okure*, 488 U.S. 235 (1989). *Id.* at 243. In *Owens*, the Court explained that a "rule endorsing the choice of the state statute of limitations for intentional torts would be manifestly inappropriate [because] ... [e]very State has multiple intentional tort limitations provisions." *Id.*  In contrast, the Court went on to note, "every State has one general or residual statute of limitations governing personal injury actions." *Id.* at 245. Thus, in order to limit "confusion or unpredictability [with respect to] the applicable [statute of] limitations" the Court held that: "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 248–50.  In Texas, the general statute of limitations governing personal injuries is two years. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); see also *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). Thus, it is well-settled law that the appropriate statute of limitations for a § 1983 claim brought in Texas is two years. *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006).

The plaintiffs attempt to extend their statute of limitations on this case by arguing the discovery rule applies here, their attempts are disingenuous.  First, as Defendants point out in their exhibit, Beckwith was shown a photo array of men who may have raped her; an array that would have been put together after her kit had been tested. (Ex. D).  According to the affidavit, Beckwith was shown the array prior to the filing of the complaint against her attacker on September 2, 2014. Therefore, Beckwith had knowledge of a possible suspect in her case, and notice of any delay of testing

her test kit, by September 2014.  Similarly, HPD attempted to contact Flores at two separate addresses on multiple occasions; Flores failed to return these communications.  (Ex. E, p. 6)[3].

Moreover, the discovery rule does not suspend the running of the statutory period "until the plaintiff learns that the defendant's conduct may be wrongful." *Timberlake v. A.H. Robins Company, Inc.*, 727 F.2d 1363, 1365 (5th Cir. 1984). In other words, the discovery rule contemplates discovery of the injury and does not suspend the running of the limitations period until the plaintiff discovers all the elements of a cause of action. *Moreno v. Sterling Drug, Inc*, 787 S.W.2d 348, 357 (Tex. 1990). Nor does the discovery rule suspend the running of limitations until the date of discovery of the responsible party. *Id.* Notwithstanding the discovery rule, "[t]he accrual of the cause of action does not await the plaintiff's recognition that he has grounds for a lawsuit," *Arabian Shield Dev. Co. v. Hunt*, 808 S.W.2d 577, 583 (Tex.App.—Dallas 1991, writ denied).  However, the discovery rule doesn't allow a plaintiff to idly sit on his hands; a plaintiff seeking to employ the discovery rule requires the plaintiff to use diligence to investigate his inquiry.  See, e.g., *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988); *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 754 (Tex.App.—Amarillo 1995, writ denied).  Neither plaintiff did so in this case, and therefore, should be barred from using the discovery rule to extend her time to file.

Plaintiffs also attempt to extend the statute of limitations by stating that the Defendants attempted to conceal the lack of testing of the SAKS kits.  (Dkt. 27, ¶ 177).  The assertion is ludicrous. The City presented a press release after a City Council meeting which was publicly available to everyone, including the plaintiffs.  Fraudulent concealment "will not bar limitations when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence." *Kerlin*

---

[3] Interestingly, Flores claims that weeks after the collection of her test kit, an officer "visited Flores and told her the SAKS would be processed in 3 months' time". (Dkt. 27, ¶ 50).  As such, when nothing happened by February, 2012, Flores' should have known of a delay which started her two-year limitations period.

*v. Sauceda,* 263 S.W.3d 920, 925 (Tex. 2008).  The publicly available press release and the articles published throughout the 2000's show that information regarding the backlog in tests was publicly available. (Ex. F)[4].  Even Plaintiffs' own evidence supports the fact that information was publicly available regarding the backlog of the test kits starting in 2013.  Plaintiffs' Exhibit 13, the cover page of a 2016 report that was released after review of the HPD processes regarding the backlog of the SAKS kits. (Dkt. 31-14).  On page 11 of the report, the NIJ review found that HPD advertised a means for sexual assault victims to contact HPD for more information about their cases, including SAK testing results.  They accomplished the task by creating a hotline so that victims could contact HPD; the hotline was advertised to the public through billboards, television, and bi-lingual pamphlets distributed throughout the city.  (Ex., G p. 12, ¶ 2).  Surely, these efforts should have given the plaintiffs the ability to find out about the status of testing in their case in December, 2013.  As such, the plaintiffs' assertions that they could not discover their injuries until 2016 is meritless and their claims should be dismissed.

### IV.    All of Plaintiffs fail to state claims for which relief may be granted.

Even if the Court finds that the statute of limitations does not bar Plaintiffs' claims, Plaintiffs have pleaded themselves out of court.  Plaintiffs' myriad claims against the Defendants are nothing more than conclusory allegations not supported by any facts in the record and which fail to meet the pleading standards of Rule 8 of the Federal Rules of Civil Procedure.  Those allegations that perhaps reach closest but still fall short of the pleading standard do not violate any rights guaranteed under any Federal or State laws.  Plaintiffs have also failed to plead facts establishing that all of the individual Defendants violated a constitutional right, and Plaintiffs cannot defeat the individual Defendants' qualified immunity defenses.  As to the State law claims, Plaintiffs have failed to state a claim for which the immunity has been waived.  Furthermore, all of the individual defendants are entitled to dismissal

---

[4] These are only a small sampling of articles that were available to plaintiffs during the 2000's.

of the State law claims against them pursuant to the election of remedies provisions of the Texas Tort Claims Act.  For these reasons, Plaintiffs' claims should be dismissed with prejudice.

### A.     Plaintiffs' due process claims fail as a matter of law.

In paragraphs 98-145 of Plaintiffs' Second Amended Complaint, Plaintiffs allege that the City's acts "constitute deliberate conduct…that violates Plaintiffs' and Putative Class Members' right to substantive due process."  (Dkt. 27, ¶ 145).  In order to prevail on this claim, Plaintiffs must prove: (1) that they had a life, liberty, or property interest protected by the Due Process Clause; (2) that they were deprived of that protected interest; and (3) that the state did not provide the plaintiffs with adequate procedural rights before depriving them of their protected interest.  *Wedgewood L.P. I v. Twp. Of Liberty*, 610 F.3d 340, 349 (6th Cir. 2009).  While plaintiffs may have a property interest in the DNA samples voluntarily submitted to be tested, it is well-settled law that state actors have no duty to protect or investigate.

The Due Process Clause is designed to limit the state's power against its citizens; it does not, however, provide a guarantee as to minimal levels of safety and security that citizens can expect from the state.  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-196 (1989).  There is no constitutional right to a police investigation.  *See Gomez v.* Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985).  Plaintiffs' voluntary submission of DNA evidence is subject to the investigatory discretion of the Houston Police Department, however the Plaintiffs' cooperation with the investigation does not trigger protections under the Due Process Clause.  *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 768 (2005) ("the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause.").  Even a negligent police investigation cannot serve as the basis of a constitutional claim.  *Orsatti v. New Jersey State Police,* 71 F.3d 480, 484 (3rd Cir. 1995).   Furthermore, notwithstanding the Plaintiffs' claim that had the City tested the SAKS kits, they would not have been sexually assaulted, the courts hold that nothing in the Due

Process Clause requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. *Deshaney v. Winnebago Cty. Dept of Soc. Servs.*, 489 U.S. at 195. The Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* Plaintiffs in this case were not deprived of their lives, liberty, or property in this case as their SAKS kits were sent for testing. Plaintiffs cannot prevail, as a matter of law, on their Substantive Due Process Claim and it must be dismissed.

**B.  Plaintiffs' allegations in their Second Amended Complaint do not establish an equal protection claim.**

To establish a gender-based equal protection claim, Plaintiffs must show (1) the existence of a policy, practice, or custom of law enforcement to provide less protection to victims of sexual assault than to victims of other assaults; (2) that discrimination against women was a motivating fact; and (3) that the plaintiffs were injured by the policy, custom or practice. *See Beltran v. City of El Paso,* 367 F.3d 299, 304–05 (5th Cir. 2004) Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977) "…[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Id.* "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination." *Id.* (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976) "While statistical evidence showing disproportional impact is probative on the issue of gender-based motivation, such evidence without a showing of intent is insufficient to sustain an Equal Protection claim." *Shipp v. McMahon*, 234 F.3d 907, 914 (5th Cir. 2000)(overruled on other grounds) (citing *Washington,* 426 U.S. at 239)

Plaintiffs' allegations and conclusory statements defeat their own equal protection claim. Plaintiffs allege that Houston has "established a policy which provides less protection to female rape

13

victims than to other victims of assault." (Dkt. 27 at ¶ 105). Plaintiffs also allege that the policy is "sex and gender-based and its adverse effect reflects invidious sex and gender-based discrimination." *Id.*

First, Plaintiffs do not cite the policy in their pleading. Instead, Plaintiffs allege only that Houston had specialized investigative units dedicated to investigating sexual assaults of women and minors (Dkt. 27 at ¶ 106) and that both of these units reported an adopted practice of submitting all SAKS for testing. *Id.* Plaintiffs do not identify any policy which states that Houston would provide less protection to female rape victims.

Finally, Plaintiffs allege that the policy has an "adverse effect" on female sexual assault victims. This is insufficient to defeat a motion to dismiss. As stated above, Plaintiffs must show that Houston intended to discriminate against women. Alleging a disproportional impact or adverse effect is insufficient to sustain an equal protection claim. For these reasons, Plaintiffs equal protection claim should be dismissed.

### C. Plaintiffs consented to the collection of the SAKS and therefore have failed to plead a Fourth Amendment violation.

The Fourth Amendment does protect an individual from searches or seizures by the government, but this right is not unfettered. Violations of the Fourth Amendment occur when an official infringed "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). However, consent to either search or seizure, so long as it is voluntary, does not violate the Fourth Amendment. *United States v. Richard*, 994 F.2d 244, 250 (5th Cir. 1993).

Plaintiffs' allegations as to their Fourth Amendment claims are contradictory and nonsensical. As an initial matter, Plaintiffs claim that the medical personnel who performed the SAKS kits are agents for the City because they were either government actors or acting at the direction of the City. (Dkt. 27, ¶ 148). No factual allegations in Plaintiffs' complaint support these outrageous statements.

For instance, Beckwith went to Memorial Hermann Southwest Hospital. (Dkt. 27, ¶ 29).  Memorial Hermann is a private entity and the nurses and doctors who work at Memorial Hermann are not government employees.  Regardless, both Plaintiffs plead that they consented to the collection of the SAKS., therefore, neither has a Fourth Amendment claim.

Moreover, Beckwith chose to go to the hospital.  (Dkt. 27, ¶ 29) She consented to having the rape kit collected and tested, otherwise, it would not have been collected or sent for testing.    Flores "insisted that charges be filed, and a SAKS was done." (Dkt. 27, ¶ 51) Nowhere in the complaint does either named plaintiff allege that either the nurse or the officer transporting her kit made any promises as to the timing of the testing of the kit, nor does she state that she ever informed anyone that, due to the delay in testing, that she ever withdrew her consent to test the kit.  Plaintiffs have negated their own Fourth Amendment claims.

Plaintiffs' contention that their consent was not objectively reasonable because of the City's "intentional failure to submit" the SAKS kits for testing, is not the standard for finding that consent was not voluntary.  Consent is involuntary if "it was coerced by treats or force, or granted only in submission to a claim of authority." *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973).  Plaintiffs have not alleged any facts that would meet the definition of an involuntary consent, and therefore, cannot prevail on their Fourth Amendment claim.

### D.    Plaintiffs' Fifth Amendment claims must be dismissed

Plaintiffs allege that "[b]y retaining and not testing SAKS collected from victims of sexual assault and rape, the city of Houston is unlawfully taking property owned by the victims in violation of the Fifth and Fourteenth Amendments."  (Dkt. 27, ¶ 161).  They further allege that the City "failed to effectuate the taking for any public use because it failed to test the genetic evidence and other collected materials, much less utilize it to facilitate the investigation and prosecution of the individual

committed the sexual assault." (Dkt. 27, ¶ 164). In essence, the Plaintiffs assert that the taking of the SAKs kits is a "taking" under the Fifth and Fourteenth amendments.

First, based on plaintiffs' own assertions, the City did not effect a taking for purposes of the Fifth or Fourteenth amendments. The plaintiffs concede that defendants did not take the kits for a "public purpose." The Supreme Court has explained that the plain language of the Fifth Amendment "requires payment of compensation whenever the government acquires private property for a public purpose, whether the acquisition is a result of a condemnation proceeding or a physical appropriation." *Tahoe-Sierra Pres. Council, Inc. v. Taho Reg'l Planning Agency,* 535 U.S. 302, 320 (2002). Based on the plaintiffs' own assertions, there was no public purpose in the appropriation of the property, and, as a matter of law, they cannot therefore seek compensation.

    **E**.     **The Plaintiffs' Fail to State A Claim for their §§ 1985 and 1986 Allegations**

Plaintiffs allege that the Defendants, "in whole or in part, conspired to interfere with the civil rights of the Plaintiffs…by keeping officers of the City of Houston and others from performing their duties related to testing of the SAK, from keeping parties and witnesses from testifying regarding SAKS or otherwise hindering such testimony and by concealing the continuing lack of SAKS testing and the delays in SAKS testing" in violation of Section 1985. (Dkt. 27 at ¶ 177). Plaintiffs do not specifically address which section of § 1985 applies to their claims, however, their blanket recitation of some of the elements of each section would suggest that Plaintiffs intend to pursue their claims under all three sections.

To state a claim under § 1985(1), a plaintiff must allege facts that demonstrate (1) a conspiracy; (2) for the purpose of preventing, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof. 42 U.S.C. § 1985(1). To state a claim under § 1985(2) a plaintiff must allege facts that demonstrate (1) a conspiracy; for the purpose of, deterring, by force, intimidation, or threat, any party

or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully.  42 U.S.C. § 1985(2).  To state a claim under § 1985(3), a plaintiff must allege facts that demonstrate (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States.  42 U.S.C. § 1985(3); *see also, Lockett v. New Orleans City,* 607 F.3d 992, 1002 (5th Cir. 2010).  All three sections require a showing of a conspiracy.  Plaintiffs have failed to plead facts to establish a conspiracy even exists.

Plaintiffs allege a conspiracy between departments of the City of Houston, which is a single entity.  When such agents and employees of a single entity are alleged to have acted, they cannot form a conspiracy.  *See Marceaux. v. Lafayette City—Parish Consol. Gov't*, 921 F. Supp.2d 605, 643-44 (W.D. La. 2013); *Britt v. Jackson Cnty., Miss.*, No. 1:11–CV–00074–HSO–JMR, 2012 WL 2460534, at *8 (S.D.Miss. June 27, 2012); *Rollerson v. Gonzalez* 2007 WL 1729643, at *4.  Since Plaintiffs have not alleged any facts establishing a conspiracy between the City and Stout, they cannot establish a conspiracy and Plaintiffs § 1985 claim fails.

Because Plaintiffs failed to properly plead a conspiracy between two or more persons for purposes of establishing a § 1985 claim, Plaintiffs' § 1986 claim likewise fails.  A § 1986 cause of action is dependent on successfully pleading a § 1985 claim first.  *See, e.g., Hamilton v. Chaffin,* 506 F.2d 904, 914 (5th Cir.1975) ("Because of this failure to state a claim cognizable under Section 1985(3), appellant may not recover under the interrelated, dependent cause of action under Section 1986, action for neglecting to prevent a known conspiracy under Section 1985.").  For these reasons, Plaintiffs' §§ 1985 and 1986 claims should be dismissed.

## V.     The individual defendants are entitled to qualified immunity.

In addition to their claims against the City of Houston, Plaintiffs sued several former Houston mayors and police chiefs, and HFSC CEO, Dr. Peter Stout, alleging that each (1) established and implemented the "unconstitutional" policy, practice or custom of failing to investigate sexual assaults against women and juveniles; (2) failed to properly train their employees or discipline employees in preventing the loss, destruction or damage[5] to SAKS; (3) failed to submit or test over 6,600 SAKS; (4) failed to properly supervise the submission of SAKS for testing; (5) failed to properly utilize SAKS to prevent rape and sexual assaults; (6) failed to arrange for the timely analysis and evaluation of the evidence contained in the SAKS; (7) failed to affect an arrest of the perpetrators of crimes committed against women; and (8) failed to prevent future victimization of women and children[6] by rape and/or sexual assaults by the perpetrators.  Plaintiffs specifically alleged that each former Houston Mayor "knew of backlog of untested SAKS, but did nothing to force or obtain funding for testing."  (Dkt. 27, at ¶¶ 81-87) Plaintiff also alleged that each former Houston Police Chief "knew of the backlog but did nothing to force the testing".  (Dkt. 27, at ¶¶ 85-88) Plaintiffs do not specifically allege that Mayor Turner, Chief Acevedo or Dr. Peter Stout knew of backlog of untested SAKS and did nothing to force or obtain funding or force testing.

Although Plaintiffs allegations might provide for a good "sound bite" for the press, they are insufficient to state a claim against each individual defendant.  Additionally, each individual defendant is entitled to qualified immunity.

---

[5]  Plaintiffs have not alleged that their SAKS were lost, destroyed or damaged.  In fact, both Plaintiffs alleged that the testing of their SAKS resulted in the identification of their assailants.  (Dkt. 27 at ¶¶ 35, 54)
[6]  Both Beckwith and Flores are adults.  There is no identified minor or class representative for any minors in the *First Amended Complaint*.

18

### A.      Qualified Immunity Standard

"Qualified immunity promotes the necessary, effective, and efficient performance of governmental duties by shielding from suit all but the plainly incompetent or those who knowingly violate the law." *Tolan v. Cotton*, 713 F.3d 299, 304 (5th Cir. 2013), rev'd on other grounds, 134 S. Ct. 1861 (2014). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it." *Zarnow v. City of Wichita Falls, Tex.,* 500 F.3d 401, 407 (5th Cir. 2007).

Qualified immunity involves a two-prong test to determine whether an official is entitled to a qualified immunity defense. *Thompson v. Johnson*, 348 Fed. Appx. 919, 922 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). First, the court must determine if the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right. *Id.* Second, if a constitutional right has been violated, the court must ask whether the right was clearly established. *Id.* The inquiry into whether the individual officials are entitled to qualified immunity turns on the objective reasonableness of their actions in light of the legal rules clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 243 (2009). If the conduct did not violate a constitutional right, there is no need to address the second prong of the qualified immunity analysis. *Thompson*, 348 Fed. Appx. at 922. Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to rebut its applicability. *Tolan*, 713 F.3d at 304.

### B.      Plaintiffs have not alleged facts that establish that any of the individual defendants violated a constitutional right.

A supervisory official may only be held liable for the acts of his/her subordinate if (1) the supervisory official affirmatively participates in the acts that cause the constitutional deprivation, or (2) he/she implements unconstitutional policies that causally result in the constitutional injury. *Porter*

*v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011)(quoting *Gates v. Texas Dep't of Prot. and Reg. Servs.,* 537 F.3d 404, 435 (5th Cir. 2008). To establish supervisory liability, a plaintiff must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates. *Id.* A supervisory official is deliberately indifferent for failing to adopt a policy if it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights. *Porter,* 659 F.3d at 446 (quoting *Rhyne v. Henderson Cnty.,* 973 F.2d 386, 392 (5th Cir. 1992).

To establish that a supervisor is liable for a failure to supervise or train, the plaintiff must show (1) "the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Porter,* 659 F.3d at 446 (quoting *Goodman v. Harris Cnty.,* 571 F.3d 388, 395 (5th Cir. 2009).

Both Plaintiffs' sections of the Second Amended Complaint where they detail the "facts pertaining to [their] unfair treatment" are devoid of any specific reference to, including direct contact with, each individual defendant. In fact, Beckwith alleged contact with the following individuals after her sexual assault: (1) unknown police officers with HPD; (2) personnel with Memorial Hermann Southwest Hospital; (3) unknown HPD detective; and (4) Harris County District Attorney's Office. (Dkt. 27 at ¶¶ 29-35) Flores only alleged contact with unnamed "HPD Detective". (Dkt. 27 at ¶ 50). There are no set of facts that any Houston Mayor, Police Chief, or CEO of HFSC, including Dr. Stout were involved in the investigations of their sexual assaults, including the submission of SAKS for testing. In fact, Turner, Acevedo, Stout, Brown, Whitmire, Bradford, and Nuchia did not hold their respective positions[7] at the time Plaintiffs' sexual assault occurred or her cause of action accrued.

---

[7]  Defendants respectfully request the Court to take judicial notice of the dates that each individually named Defendant served in their respective positions:  Sylvester Turner (2016 to present); Annise Parker (2010 to 2016); Bill White (2004-2010); Lee Brown (Mayor 1998-2004),(Police Chief 1982-1990); Bob Lanier (1992-

Thus, Plaintiffs' only available path is by establishing that one or more of the individual defendants implemented unconstitutional policies that causally resulted in Plaintiffs constitutional injuries or they failed to train or supervise subordinate officers.

As stated in previous arguments in this motion and in detail below, Plaintiffs cannot establish a constitutional violation nor can they establish that it was clearly established law that the individual defendants' alleged conduct would result in Plaintiffs' specific constitutional injury.  Therefore, the individual defendants are entitled to qualified immunity.

> **1.      Plaintiffs have not alleged any facts that would establish that any Houston Mayor and/or Dr. Stout were policymakers for the Houston Police Department.**

Plaintiffs have not alleged facts that the Mayors or HFSC CEO Dr. Stout were responsible for the management of the police department or the development of its policies.  "…[W]hether a particular official has 'final policymaking authority' is a question of state law."  *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988) Indeed, Houston law specifically dictates that the management of the police department, including promulgating the rules and regulations governing the assignments, responsibilities and authority of all officers, is that of the chief of police.  *See* Houston, Tex. Code of Ordinances, ch. 34, art. II, §§ 34-22 and 23 (1968).  Because there are no facts that the Mayors and/or HFSC CEO Dr. Stout were actively involved in the investigations of the sexual assaults of the Plaintiffs and none held final policymaking authority or management over the Houston Police Department, all are entitled to qualified immunity.

> **2.      Plaintiffs have not alleged facts that would establish that any of the individual defendants adopted and implemented unconstitutional policies that causally result in the constitutional injury.**

---

1998); Kathy Whitmire (1982-1992); Art Acevedo (2016 to present); Charles McClelland (2010-2016), Harold Hurtt (2004-2009); Clarence Bradford (1997-2004); Sam Nuchia (1992-1997); Elizabeth Watson (1990-1992). Dr. Peter Stout was appointed to his position as CEO of HFSC in January 2017.  *See Exhibit I,* January 13, 2017, press release announcing his appointment.

Plaintiffs alleged violations of their rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.  As stated in detail above, Plaintiffs have not alleged facts which established a violation of any of these rights.  Therefore, Plaintiffs cannot establish that any of the individual defendants, including any of the Houston Police Chiefs, were deliberately indifferent by adopting and implementing any policy where it was obvious that the likely consequences of not adopting a policy would be a deprivation of Plaintiffs' constitutional rights.

Plaintiffs also cannot establish any causal connection between any purported unconstitutional policy and the criminal conduct of their assailants.  Plaintiffs' speculation that their sexual assaults could have been prevented had previous SAKS been tested assumes a lot.  It assumes that the District Attorney's Office would have pursued charges, that the assailants would have been held in custody pending a criminal trial, and/or that their convictions would have occurred.  It also incorrectly assumes that the Constitution extends protections to its citizens for criminal acts by private actors.  *See DeShaney,* 489 U.S. at 195.  Assumptions are not sufficient facts to overcome Defendants' qualified immunity defenses.

3.    **Plaintiffs' failure to train and supervise claims fail to allege facts which would entitle them to relief.**

Plaintiffs have not alleged and cannot allege facts that any of the named Houston Mayors, certain former police chiefs, current police chief, or Dr. Peter Stout had any involvement in the supervision and training of any Houston Police Department employees responsible for the investigation and submission of Plaintiffs' SAKS for testing.  Thus, they cannot be liable for failing to train and supervise those employees.

McClelland, the Police Chief at the time of Plaintiffs' assaults, is entitled to qualified immunity because Plaintiffs have not alleged facts which establish that Plaintiffs suffered constitutional injuries; that as Police Chief, McClelland had knowledge of the progress of subordinate officers' investigations of Plaintiffs' assaults; or that McClelland knew or should have known that the failure to train or

supervise police department employees would result in a constitutional violation.  For these reasons, McClelland is also entitled to qualified immunity.

### C.     The constitutional rights Plaintiffs complain of were not clearly established at the time.

Even if the Court finds that Plaintiffs have pleaded sufficient facts to defeat the first prong of the qualified immunity analysis, Plaintiffs cannot establish that the clearly established law at the time was that SAKS testing was/is the only means (e.g. tool of investigation) of identifying an assailant who has committed a sexual assault and that the failure to submit and rely on the testing of SAKS would result in a constitutional injury.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987))  It is not required that a case be exactly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*  It is not well-settled law that the failure to investigate a sexual assault or the failure to submit SAKS for testing would lead to the violation of a person's constitutional rights.  To the contrary, the Fifth Circuit has held that failing to investigate or prosecute an offense, including a sexual assault, does not give rise to § 1983 liability.  *See Rolen v. City of Brownfield, Tex.*, 182 Fed.Appx. 362, 364 (5th Cir. 2006) (citing *Piotrowski v. City of Houston,*237 F.3d 567, 582 (5th Cir. 2001).  For these reasons, all of the individual defendants are entitled to qualified immunity.

### VI.     Plaintiffs' state law negligence claims should be dismissed.

Defendants move to dismiss all of Plaintiffs' Texas state law negligence claims under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs have failed to state a claim for which immunity has been waived.  "[I]mmunity from suit implicates courts' subject-matter jurisdiction."

*Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012). Additionally, Plaintiffs' negligence claims should be dismissed under Rule 12(b)(6), because they are time barred. Furthermore, the negligence claims against the individual defendants must be dismissed pursuant to Texas Civil Practice and Remedies Code § 101.106, because the individual defendants are statutorily entitled to dismissal under the Texas Tort Claims Act. *University of Tex. Health Science Center at Houston v. Rios,* --- S.W.3d ---, 2017 WL 6396028, at * (Tex. 2017). Additionally, Plaintiffs have made no allegations of negligence on the part of the Houston Forensic Science Center ("HFSC") or Peter Stout ("Stout"), CEO of HFSC, and therefore, any negligence claims against HFSC or Stout should be dismissed, to the extent such claims may exist.

**A.     Legal standard for governmental immunity under the Texas Tort Claims Act.**

Governmental immunity protects municipalities (such as the City of Houston) and local government corporations (such as the Houston Forensic Science Center) from lawsuits for money damages unless such immunity is waived. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Ray Ferguson Interests, Inc. v. Harris Cty. Sports and Conv. Corp.,* 169 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

The Texas Tort Claims Act (the "TTCA"), Chapter 101 of the Texas Civil Practice & Remedies Code, governs waiver of immunity for tort suits against governmental units. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 378 (Tex. 2006). The TTCA does not create a cause of action but merely waives immunity for a cause of action that otherwise exists; the limited waiver of immunity for tort suits against governmental units occurs only in certain narrowly-defined circumstances. *See City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997); *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001).

The TTCA waives governmental immunity for torts in three areas: (1) injury caused by use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal property; or (3)

premises defects. *See* TEX. CIV. PRAC. & REM. CODE § 101.021 (West 2011); *Sampson v. Univ. of Texas at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). Immunity for suits arising from a condition or use of tangible personal property is waived only if the governmental unit (if it were a private person) would otherwise be liable under Texas law. TEX. CIV. PRAC. & REM. CODE § 101.021 (West 2011).

The TTCA *does not waive* immunity for intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057 (West 2011). *See also City of Watauga v. Gordon,* 434 S.W.3d 586, 593-594 (Tex. 2014) (claim for negligent use of handcuffs was, in fact, a battery claim, and immunity was not waived). Also excluded from the TTCA's waiver of immunity are allegations against a governmental unit arising out of the same conduct forming the basis of intentional tort claims. *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001). *Accord City of Watauga,* 434 S.W.3d at 594.

The TTCA does not apply to a claim arising "from the failure to provide or the method of providing police or fire protection." TEX. CIV. PRAC. & REM. CODE § 101.055(3). Accordingly, "the government is immune from liability if the negligence that causes injury lies in the formulation of policy, such as whether and how to provide police protection . . . This provision was intended to avoid judicial review of the discretionary policy decisions that governments must make in deciding how much, if any, police and fire protection to provide for a community." *Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 397 (Tex. App.—Dallas 1998, no pet.) (citing *State v. Terrell*, 588 S.W.2d 784, 786-87 (Tex. 1979).

**B. Plaintiffs have not stated a cause of action under the TTCA because they have not alleged facts that, even if true, would result in a waiver of immunity.**

In this case, the Plaintiffs have alleged that the Defendants failed to perform DNA testing on Sexual Assault Evidence Kits (or "SAKS"), and that the failure to do so was a custom or practice overseen by the individual Defendants. (Dkt # 27, at ¶¶ 2, 3.) Specific to their negligence claims, Plaintiffs also allege that "Houston is liable when investigating police officers fail to investigate properly or fail to investigate at all . . .", and that Houston increased the risk to the putative class

members by failing to test SAKS kits.  Dkt # 27, ¶ 169.  Plaintiffs also set forth a list of alleged

negligent acts or omissions by Houston, including failure to train and supervise, failure to protect and

ensure evidence was not discarded, lost or mishandled, and failure to discipline Houston Police

Department employees for failing to investigate.  Dkt # 27, ¶ 174.

### 1. Plaintiffs have not alleged facts supporting a claim for an injury caused by a condition or use of tangible personal property.

#### a. Non-use of property cannot support a claim under the TTCA.

Plaintiffs have not alleged any facts to support a negligence claim for which immunity would

be waived under the TTCA.  Under the TTCA, governmental immunity is waived for only three types

of claims: (1) injury caused by use of a motor-driven vehicle; (2) injury caused by a condition or use

of tangible personal property; and (3) injury caused by a condition or use of real property.  *See* Tex.

Civ. Prac. & Rem. Code §§ 101.021, 101.022 (West 2011); *Sampson,* 500 S.W.3d at 384.  The Second

Amended Complaint makes no reference to a motor-driven vehicle or to real property.  Therefore, it

appears Plaintiffs are attempting to shoehorn their negligence claims into the "tangible personal

property" waiver in Section 101.021(2).  *See* Dkt # 27, § XV, "Fifth Amendment Takings

Clause/Misuse of Property".  However, the allegation of failure to test rape kits does not constitute a

misuse of tangible personal property claim for which immunity is waived.

Plaintiffs' Second Amended Complaint alleges that Houston[8] is liable because its failure to test

rape kits (1) damaged the Plaintiffs because of their sexual assaults by identifiable perpetrators, and

(2) somehow resulted in a non-consensual deprivation of Plaintiffs' property and rights to privacy.

Dkt # 27, ¶¶ 166-175.  It is unclear whether the plaintiffs are attempting to base their claims on the

---

[8] Section XVI, entitled "Negligence", makes no factual allegations against the Houston Forensic Science Center or Peter Stout.  Accordingly, it appears that Plaintiffs are not asserting claims for negligence against HFSC or Stout.  Furthermore, a thorough review of the Second Amended Complaint revealed no identifiable factual allegations against HFSC or Stout.  Therefore, to the extent Plaintiffs are attempting to assert any negligence claims against HFSC or Stout, such claims should be dismissed.

SAKS kits of other individuals, or on the basis of Plaintiffs' own specimens.  Nevertheless, Plaintiffs'

claims fail under either theory.  The Texas Supreme Court and Texas lower courts have uniformly

held that the failure to use property cannot support a claim for "condition or use of tangible personal

property."

For example, in *Sampson v. University of Texas at Austin*, 500 S.W.3d 380 (Tex. 2016), the Texas

Supreme Court held that to state a claim for "use" of tangible personal property under the TTCA,

"the injury must be *contemporaneous* with the use of the tangible personal property." *Sampson*, 500 S.W.3d

at 388-389.  *Id.*  "[U]sing the property must have *actually caused the injury.*"  *Id; see also Dallas County Mental

Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) (non-use of lock on door of

mental health facility through which patient escaped was not proximate cause of patient's death where

patient leaped in front of a moving truck, and therefore misuse or non-use did not waive immunity

under TTCA).  Therefore, allegations of mere non-use of property cannot support a "use" claim under

the TTCA."  *Sampson*, 500 S.W.3d at 389 (citations omitted).   *See also Texas Dept. of Criminal Justice v.

Miller*, 51 S.W.3d 583, 587-589 (Tex. 2001); *Kerrville v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996) (failure

to administer drug to psychiatric patient was a non-use of property for which immunity was not

waived, where patient later escaped and murdered plaintiffs' decedent); *Rogge v. City of Richmond*, 506

S.W.3d 570, 576 (Tex. App.—Houston [1st Dist.] 2016 (reh'g overruled 2017); *Univ. of Tex. Med. Branch

v. Thompson*, 2006 WL 1675401, *3-4 (Tex. App.—Houston [14th Dist.] June 20, 2006, no pet.) (no

waiver of immunity for failure to make timely use of medical diagnostic tools).

Here, Plaintiffs have claimed that the Defendants failed to test rape kits containing DNA

obtained from them and from prior sexual assault victims.  However, the failure to test – or non-use

– of SAKS kits or the genetic material contained in SAKS kits, cannot support a negligence claim

under the Texas Tort Claims Act, and Plaintiffs' negligence claims must be dismissed.  *See Sampson*,

500 S.W.3d at 388-389; *Kerrville*, 923 S.W.2d at 584.  *See also Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex.

1994) (non-use of available drugs is not a use of tangible personal property that triggers waiver of sovereign immunity). Furthermore, the alleged misuse or non-use of genetic information is so attenuated from the sexual assaults of Plaintiffs, that the failure to test cannot support a negligence claim. *See Cherry v. Texas Dept. of Criminal Justice*, 978 S.W.2d 240, 244 (1998) (use of property was "too attenuated 'geographically, temporally, and causally' from [plaintiff's injury] to have caused it.") (quoting *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998).

### b. Misuse of information cannot support a TTCA claim.

Plaintiffs claim that the Defendants' failure to test SAKS kits for DNA "resulted in damages to the plaintiffs because of their subsequent rape by identifiable perpetrators." Dkt # 27, ¶ 2. Plaintiffs plead that if the Defendants had tested all the SAKS kits for DNA, the perpetrators would have been identified and convicted in earlier cases, and therefore, the Plaintiffs would not have been sexually assaulted.

The Texas Supreme Court has consistently held that the misuse or non-use of information does not constitute misuse of tangible personal property, and therefore cannot support a TTCA claim. *Texas Dep't of Public Safety v. Petta*, 44 S.W.2d 575, 580-81 (Tex. 2001); *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (use, misuse, or non-use of medical information did not constitute misuse of tangible personal property); *University of Texas Med. Branch at Galveston v. York*, 871 S.W.2d 175, 176 (Tex. 1994); *Redden v. Denton Cty.*, 335 S.W.3d 743, 751 (Tex. App.—Fort Worth 2011, no pet.); *Cherry v. Texas Dept. of Criminal Justice*, 978 S.W.2d 240, 242 (Tex. App.—Texarkana, 1998, no pet.) (misclassification of inmate's information, which allowed him to escape and kidnap plaintiff, was not misuse of tangible personal property that would waive immunity). Therefore, the failure to use DNA information cannot support a claim under the TTCA.

### c.      Failure to train and supervise

Plaintiffs have included a laundry list of allegations as part of their negligence claim.  Their list includes alleged failure to properly train and supervise, and failure to properly use SAKS kits to prevent rape and sexual assaults.  Dkt 27, ¶ 91.  None of these laundry list items fall within the "use of tangible property" waiver under the TTCA.  Moreover, under Texas law, there is no waiver of immunity for injuries caused by negligent failure to train, supervise, monitor, or investigate.  *See University of Texas M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 879 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (no waiver of immunity for injuries proximately caused by the negligent exercise of medical judgment, use or misuse of information, failure to act or use property, failure to supervise, failure to investigate, or failure to monitor).  *See also Texas A&M Univ. v. Bishop*, 156 S.W.3d 580, 583-584 (Tex. 2005) (no TTCA liability for failure to supervise); *Texas Dep't of Public Safety v. Petta*, 44 S.W.2d 575, 580-81 (Tex. 2001) (negligent training claim failed because it did not involve tangible personal property)*; Univ. of Tex. Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (immunity is not waived for injury or death caused by negligent supervision).

### d.  The TTCA does not waive immunity for a claim arising from the failure to provide or the method of providing police or fire protection.

The TTCA does not waive immunity for failure to provide or the method of providing police or fire protection.  TEX. CIV. PRAC. & REM. CODE § 101.055(3).  *See also Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 397 (Tex. App.—Dallas 1998, no pet.) ("This provision was intended to avoid judicial review of the discretionary policy decisions that governments must make in deciding how much, if any, police and fire protection to provide for a community.") (citing *State v. Terrell*, 588 S.W.2d 784, 786-87 (Tex. 1979).  Plaintiffs' Second Amended Complaint claims that the Defendants failed to provide adequate police protection, resulting in Plaintiffs' being sexually assaulted.  *See, e.g.,* Dkt # 27, ¶¶ 169 ("Houston is liable when investigating police officers fail to investigate properly or fail to investigate at all . . ."), 171 ("Houston contributed to, increased, and changed the risk which would

have otherwise existed to Plaintiffs . . .").  Because the TTCA does not waive immunity for failure to provide or the method of providing police protection, Plaintiffs' Texas state law negligence claims must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

> ### e.  Plaintiffs have not stated a claim under the TTCA because the conduct alleged is the same as that underlying their 1983 claims.

The TTCA does not waive immunity for intentional torts.  TEX. CIV. PRAC. & REM. CODE § 101.057 (West 2011).  *See also City of Watauga v. Gordon,* 434 S.W.3d 586, 593-594 (Tex. 2014).  Also excluded from the waiver of immunity under the TTCA are allegations against a governmental unit arising out of the same conduct that formed the basis of the intentional tort claims against its employee. *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).

Here, the Plaintiffs allege "the persistent and intentional failure to test thousands of Sexual Assault Evidence Kits".  Dkt #27, at p. 2.  They further allege reliance on "Houston's intentional and false representations regarding the genetic evidence", that the Defendants "decided to test only a fraction of these kits", and that "Defendants have maintained a practice of not submitting SAKS for testing, not reviewing test results, and failing to preserve evidence."  Dkt #27, ¶¶ 39, 74, 79.  Because the Plaintiffs' negligence claims rest on the same facts that form the basis for their Section 1983 claims for intentional violations of Plaintiffs' civil rights, the Plaintiffs cannot state a negligence claim under the TTCA.  *See City of Watauga v. Gordon,* 434 S.W.3d 586, 593-594 (Tex. 2014); *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001) ("Here, the conduct Petta complains of is the same conduct that forms the basis of her assault and battery claim.").

> ### C.  To the extent Plaintiffs seek to recover damages from any of the individual defendants under the TTCA, those claims must be dismissed under section 101.106 of the Act.

Section 101.106 of the TTCA requires an *irrevocable election* by a plaintiff, at the outset of the litigation, whether to pursue its tort claims against the government or its employee.  TEX. CIV. PRAC. & REM. CODE § 101.106 (a), (b), (e), and (f).  *See also Mission Consol. Sch. Dist. v. Garcia*, 253 S.W.3d 653,

657 (Tex. 2008).  The negligence allegations in Plaintiffs' Second Amended Complaint appear to be asserted only against the City of Houston.  Dkt # 27, ¶¶ 166-175 (*e.g.*, "Houston is liable when investigating police officers fail to investigate properly or fail to investigate at all . . .").  The Second Amended Complaint makes no negligence allegations against any of the individual defendants or against the Houston Forensic Science Center ("HFSC").  However, Plaintiffs also seek "[j]udgment finding Defendants jointly and severally liable for monetary damages", and injunctive relief "which would require the Defendants to establish and enforce policies and procedures . . .."  Dkt # 27, ¶¶ 186, 191.  Additionally, Plaintiffs' Second Amended Complaint drops its claims against the Houston Forensic Science Center and current employees of the City of Houston, in what appears to be an attempt to circumvent the election of remedies provisions of the TTCA.

In its original Motion to Dismiss (Dkt # 17, § VII.C., pp. 29-30), Defendants City of Houston and HFSC moved to dismiss the state law claims against all the individual defendants, as provided under TEX. CIV. PRAC. & REM. CODE § 101.106 (e):

> If a suit is filed under this chapter against both a governmental unit and any of its employees, the *employees shall immediately be dismissed* on the filing of a motion by the governmental unit.

*See Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 655-56; *Hintz v. Lally*, 305 S.W.3d 761, 769 (Tex. App.—Houston [14th Dist.] 2010, no pet.).[9]  Even though Plaintiffs have now amended their Complaint to drop their claims against HFSC and the current Mayor and Police Chief, Defendants remain entitled to have all negligence claims against the individual defendants dismissed pursuant to

---

[9] Not all the individual defendants have been served, and/or some of their responsive pleadings are not yet due.  The Defendants file this portion of the First Amended Motion to Dismiss pursuant to Texas Civil Practice and Remedies Code Section 101.106, and move to dismiss the state law claims against all the individual defendants under Rule 101.106(a), (b), (e), and (f).

TEX. CIV. PRAC. & REM. CODE § 101.106 (a),[10] (b), (e), and (f).[11]  *See University of Tex. Health Science Center at Houston v. Rios,* --- S.W.3d ---, 2017 WL 6396028, at * 3-5 (Tex. 2017) (where plaintiff originally brought suit against government medical center and employees, then amended his petition to drop tort claims against government entity, employees were still entitled to dismissal of the tort claims against them under the election of remedies provision of TTCA.  "[F]ollowing Rios' amended petition, defendants remained entitled to dismissal of the tort claims asserted against the Doctors in his original petition . . ..").

### D.    Plaintiffs' state law claims are time barred and should be dismissed.

Plaintiffs' state law claims are time barred under the two-year statute of limitations for the same reasons discussed above relating to their federal Section 1983 claims.  *See* TEX. CIV. PRAC. & REM. CODE § 16.003 (West 2002 and Supp. 2012).  In addition, the discovery rule does not toll the notice provisions of the TTCA, which require plaintiffs to provide notice to Houston of any claim within ninety days of the injury.  *See Timmons v. University Med. Ctr.,* 331 S.W.3d 840, 848 (Tex. App.—Amarillo 2011, no pet.); TEX. CIV. PRAC. & REM. CODE § 101.101, as modified by Article IX, § 11 of the Houston City Charter.  The limitations period for Plaintiff Beckwith's state law negligence claims expired in April of 2013, two years after she was sexually assaulted in 2011.  The limitations period for Plaintiff Flores's state law negligence claims expired in September 2013, two years after she was sexually assaulted in 2011.  Thus, Plaintiffs' negligence claims are time barred and should be dismissed under Rule 12(b)(6) for failure to state a claim, and under Rule 12(b)(1) for failure to give timely notice.

### CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss all of Plaintiffs' claims in this lawsuit and any other relief to which Defendants may be entitled.

---

[10] "The filing of a suit under this chapter against a governmental unit constitutes an *irrevocable* election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." (emphasis added).

[11] "If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee *in the employee's official capacity only.* On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed." (emphasis added).

Furthermore, Defendants ask that this court use its inherent authority to dismiss actions against any unserved defendant in this action as further service and response for these defendants as the action is barred by the reasons stated above. *See Rismed Oncology Systems, Inc. v. Baron*, 638 Fed. Appx, 800 (11th Cir. 2015).

Respectfully submitted,

RONALD C. LEWIS
City Attorney

DONALD J. FLEMING
Section Chief, Labor, Employment, & Civil Rights

By:  */s/  Deidra Sullivan-Norris*
DEIDRA NORRIS SULLIVAN
Senior Assistant City Attorney
State Bar No. 24080648
Fed. Bar No. 1338580
Deidra.Sullivan@houstontx.gov
Tel. (832) 393-6299

CONNICA LEMOND
Senior Assistant City Attorney
State Bar No. 24031937
Fed. Bar No. 435483
Connica.Lemond@houstontx.gov

SUZANNE R. CHAUVIN
Senior Assistant City Attorney
State Bar No. 04160600
Fed. Bar No. 14512
Suzanne.Chauvin@houstontx.gov
Tel. (832) 393-6219

CITY OF HOUSTON LEGAL DEPARTMENT
P.O. BOX 368
Houston, Texas  77002-0368
Fax (832) 393 – 6259

ATTORNEYS FOR DEFENDANT(S)

## CERTIFICATE OF SERVICE

I certify that on March 21, 2018, a copy of Defendants' Amended Motion to Dismiss was electronically

filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the

following attorney in charge:

Randall L. Kallinen                          Roy J. Rodney, Jr.
TBN: 00790995                                TBN: 24082489
FBN: 19417                                   Rodney & Etter, LLC
Kallinen Law PLLC                            800 Bering Drive, Suite 220
511 Broadway Street                          Houston, Texas 77057
Houston, Texas 77012                         713.936.2829
713.320.3785                                 713.936.2812 (f)
attorneykallinen@aol.com                     rjr@rodneylaw.com

Charles H. Peckham                           Mary A. Martin
TBN: 15704900                                TBN: 00797280
FBN: 15770                                   FBN: 12272
cpeckham@pmlaw-us.com                        mmartin@p.law-us.com

Peckham Martin, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
713.574.9044
713.493.2255 (f)

ATTORNEY(S) FOR Plaintiff(s)


                                    /s/ CONNICA LEMOND
                                    CONNICA LEMOND